IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIAN BRADLEY | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 17-1587 |
| | : | |
| AMAZON.COM, INC et al. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                         December 1, 2021

Presently before the Court is Plaintiff's Julian Bradley ("Plaintiff" or "Bradley") Motion for a Temporary Restraining Order (Doc. 125) and Defendants' Amazon.com ("Amazon") and Searay LLC d/b/a "EasyAcc.com" ("EasyAcc") Responses (Docs. 129, 130). For the reasons set out below, the motion is denied.

I.   BACKGROUND

The procedural history of this case is lengthy and well known to the parties, so we recount only those facts pertinent to the resolution of this motion. This litigation arises out of Bradley's allegations that he was injured by a wireless phone charger sold by EasyAcc through Amazon's website. (Doc. 130 at 2); *see also* (Doc. 1 at 16-27.) On March 29, 2021, default was entered against EasyAcc for failure to respond or otherwise appear. (Doc. 72.) Several months later, on August 30, 2021, EasyAcc entered an appearance and was instructed by this Court to file a motion to set aside the entry of default if it wished to proceed. *See* (Doc. 107); (Doc. 120.) On November 5, 2021, EasyAcc submitted its Motion to Set Aside the Entry of Default (Doc. 123) and attached materials in support of its motion, which included a witness declaration by an individual named Sanzhong Chen ("Chen"). *See* (Doc. 123.) Chen certified that he is "the current director of

1

EasyAcc Technology Co., Limited" ("EasyAcc Ltd.").[1] (Doc. 123-2, Chen Decl. ¶¶ 1, 2.) In his declaration, Chen stated the following: "On or about December 21, 2017, an account specialist at Amazon informed EasyAcc, Ltd. that Amazon had placed all disbursements from EasyAcc, Ltd.'s seller account on hold because of this instant action."(*Id*. at ¶ 17.)

About a week later, on November 11, 2021, Bradley submitted this Motion for a Temporary Restraining Order, requesting that we place a prejudgment freeze on EasyAcc's assets.[2] (Doc. 125.) The basis for Bradley's motion was the information that came to light in Chen's declaration regarding Amazon's ability to place a hold on EasyAcc's account. Namely, "Plaintiff has concerns that [EasyAcc] will be unable to pay damages, and further that [EasyAcc] somehow caused Defendant Amazon to take this action [placing a hold on EasyAcc's account] out of concerns that [EasyAcc] will abscond, misappropriate, or otherwise deprive Plaintiff from eventual recovery in this matter." (*Id*. at 1.) We ordered that Amazon and EasyAcc respond to Bradley's motion, which they timely filed on November 18, 2021. *See* (Doc. 128); *see also* (Docs. 129, 130.)

---

[1] We note that "Searay LLC d/b/a EasyAcc.com," and "EasyAcc, Ltd." are not the same entity. Chen's declaration provides statements suggesting that Searay LLC may have been improperly named as a defendant in this litigation. That issue is not presently before the Court, however, and we reserve the right to decide on that question during the resolution of EasyAcc's Motion to Set Aside Entry of Default (Doc. 123).

[2] A temporary restraining order can bind only three categories of individuals: (1) the parties; (2) the parties' officers, agents, servants, employees, and attorneys; and (3) other persons who are in active concert or participation with anyone described in the prior categories. *See* Fed. R. Civ. P. 65(d)(2). A non-party, however, cannot be bound by the terms of a temporary restraining order. *See Elliott v. Kiesewetter*, 98 F.3d 47, 56 (3d Cir. 1996). We note that EasyAcc is a currently defaulted party in this action and that its Motion to Set Aside Entry of Default (Doc. 123) is still pending before this Court. The legal effect of EasyAcc's default is that it is "deemed to have admitted to every well-pled allegation in the complaint, except for those relating to the amount of damages." *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015). Thus, an entry of default indicates a party's failure to respond to the complaint and prohibits any further contest of the plaintiff's allegations, but it does not terminate a party's involvement in the litigation. We are satisfied, then, that EasyAcc can be subject to a temporary restraining order, as a "defaulted party" is not necessarily a "non-party."

## II. LEGAL STANDARD

A request for preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders as well as preliminary injunctions.[3] *See* Fed. R. Civ. P. 65. A temporary restraining order ("TRO") is a specific form of preliminary injunctive relief that preserves "the status quo" between the parties while the merits of the case are explored through litigation. *See J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (citations omitted). The standard for granting a TRO is the same as that for issuing a preliminary injunction. *See Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) (citing *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994)). In order to succeed, a party must demonstrate: "(1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest." *Id*. (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). The moving party bears the burden of showing that these factors favor granting the injunction. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). The failure to establish any of these elements, however, renders the issuance of an

---

[3] Federal Rule of Civil Procedure 65 differentiates between these two forms of equitable relief. A preliminary injunction may only be issued with notice to the adverse party. *See* Fed. R. Civ. P. 65(a)(1). In contrast, a TRO may be issued without notice where it is "clearly show[n] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1). Furthermore, "temporary restraining orders are of short duration and terminate with a ruling on [a] preliminary injunction[.]" *Hope v. Warden York Cty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020) (quoting *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 692 (3d Cir. 1997)). Absent good cause or consent to extend, a TRO must expire within fourteen (14) days. *See* Fed. R. Civ. 65(b)(2).

injunction inappropriate. *See QVC, Inc. v. Resultly, LLC*, 99 F. Supp. 3d 525, 532 (E.D. Pa. 2015) (citation omitted).

For a plaintiff who specifically seeks a *prejudgment freeze* of a defendant's assets, he must overcome the general rule that, "a federal court has no authority to freeze a defendant's funds to help ensure satisfaction of a judgment should the plaintiff prevail on an underlying legal claim." *See Symphony FS Ltd. v. Thompson,* No. 5:18-CV-3904, 2018 WL 6715894, at *8 (E.D. Pa. Dec. 20, 2018) *(citing Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc*., 527 U.S. 308, 333 (1999))*. To prevail, in addition to the requirements necessary to obtain a preliminary injunction, the plaintiff must satisfy the court that, "(1) he asserts a cognizable equitable claim, (2) he demonstrates a sufficient nexus between that equitable claim and specific assets of the defendant which are the target of the injunctive relief, and (3) he shows that the requested interim relief is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." *Id.* (quoting *F.T. Int'l, Ltd. v. Mason*, No. CIV.A. 00-5004, 2000 WL 1514881, at *1 (E.D. Pa. Oct. 11, 2000)). Of particular importance is that the plaintiff must have some claimed "lien or equitable interest" in a defendant's assets beyond that of a possible money judgment. *U.S. ex rel. Rahman v. Oncology Assocs*., 198 F.3d 489, 496 (4th Cir. 1999) ("[T]he general equitable powers of the federal courts do not include authority to issue preliminary injunctions [preventing the defendant from transferring unencumbered assets] in actions solely at law[.]"). This has not been done here.

### III.   DISCUSSION

At the outset, we note that Bradley's Motion for a Temporary Restraining Order (Doc. 125) reads more like a response to EasyAcc's Motion to Set Aside Entry of Default (Doc. 123) than a stand-alone request for injunctive relief. In fact, the main thrust of Bradley's legal argument in support of his "TRO" appears to be that this Court should not allow EasyAcc to proceed as an

4

active party. (*Id*. at 2-3.) Bradley's motion contains very little, if any, factual allegations or legal reasons as to why we should take the extreme measure of freezing EasyAcc's assets during the pendency of this litigation. As the moving party, Bradley carries the burden of demonstrating that he has met the four factors required for a preliminary injunction, in addition to the three factors required to obtain a prejudgment freeze on a defendant's assets. *See Opticians Ass'n of Am*., 920 F.2d at 192; *Symphony FS Ltd*., No. 5:18-CV-3904, 2018 WL 6715894, at *8. As Bradley has failed to provide any cohesive argument in accord with the relevant legal standards, we find it difficult to discern any basis for this TRO. Bradley did not argue that he would have any likelihood of success on the merits against EasyAcc, nor did he argue that granting injunctive relief would not result in even greater harm to EasyAcc. Bradley did, however, briefly address the public interest element by stating that this Court should grant the TRO in accordance with "[t]he public interest in preventing entities from behaving this way" and also that "the public interest is furthered by holding companies doing business in this manner accountable." (Doc. 125 at 4.) Yet Bradley has not demonstrated that this "public interest" is specific or compelling enough to warrant injunctive action against EasyAcc. That said, Bradley has cobbled together some allegations to suggest that he may suffer irreparable harm if the TRO is not granted, which we address below. [4]

---

[4] We accept that although not required by Federal Rule of Civil Procedure 65, it is common to hold a hearing to determine the outcome of a TRO. *See Bradley v. Pittsburgh Bd. of Educ*., 910 F.2d 1172, 1175 (3d Cir. 1990). We did not call a hearing to discuss the claims set out in Bradley's TRO, however, as it is our prerogative to determine whether a hearing is necessary to address a "disputed factual issue." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015). We do not detect any disputed factual issues set forth in the briefing submitted by the parties. As discussed within, Bradley has utterly failed to demonstrate that Amazon has an active "hold" on EasyAcc's accounts or that EasyAcc intends to "evade responsibility" in this litigation. *See* (Doc. 129 at 1-2); (Doc. 130 at 4-6.) Bradley has barely set forth the proper legal standard of review for a TRO, let alone provided substantive arguments as to why a TRO should issue in this case. In our view, Bradley has not presented "a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *See Bradley*, 910

In order to show a danger of "immediate, irreparable harm" the moving party must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) (internal citations omitted.) "The risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). Instead, an assertion of irreparable harm must be based on concrete evidence and cannot be sustained "on the basis of 'bald and conclusory' statements." *Cornette v. Graver*, No. 3:19-cv-219, 2020 WL 4059589, at *24 (W.D. Pa. July 20, 2020); *see also Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (stating that the moving party must make a clear showing of immediate harm.) Bradley seeks to freeze EasyAcc's assets over concerns about whether it will have the financial capacity to pay damages. (Doc. 125 at 1.) In Bradley's view, freezing EasyAcc's assets "is necessary as Defendant has already shown an intent to evade responsibility for any judgments or awards that may be entered against [it]." (*Id.* at 4.) This intent, he claims, is revealed by: (1) Amazon's alleged hold on EasyAcc's account "to prevent what is presumed to have been an effort [by EasyAcc] to pilfer money;" (2) EasyAcc's status as a defaulted party; and (3) the fact that EasyAcc's sale of "U.S. based trademarks to a company in China is concerning." (*Id.*)

In our most liberal reading of Bradley's motion, we are unable to ascertain how he would be "irreparably harmed" if we do not freeze EasyAcc's assets for the above-stated reasons. Plaintiff has not produced any evidence to support his proposition that EasyAcc's has made purported efforts "to pilfer money" from its account to deprive Bradley of collecting damages. Bradley appears to rely on the fact that Amazon temporarily placed all disbursements from EasyAcc's

---

F.2d at 1176. Therefore, the circumstances of this motion do not require further argument in a hearing, and we deny Bradley's motion for a TRO solely on its briefing. *See id.*

6

seller account on hold in 2017. (Doc. 123-2, Chen Decl. ¶ 17.) Both Amazon and EasyAcc have explained in their briefing that as a third-party seller on Amazon's website, EasyAcc is subject to Amazon's "Business Solutions Agreement." (Doc. 129 at 1-2); (Doc. 130 at 5.) Pursuant to the agreement's terms, "Amazon processes payment for EasyAcc's sales and disburses the proceeds on a periodic basis, less Amazon's service fees." (Doc. 129 at 1). The agreement also included an indemnity provision, under which Amazon "temporarily held disbursements to EasyAcc in 2017 pending EasyAcc's response to Amazon's request for indemnity[.]" (*Id*.) Disbursements resumed after EasyAcc responded, and both parties report that, at present, "[n]o funds in EasyAcc's account are frozen [by Amazon]." (*Id*. at 2); (Doc. 130 at 5.) In fact, Amazon reported that it is "making regular disbursements of EasyAcc's funds per the Business Solutions Agreement." (Doc. 129 at 2.) Bradley has not provided any indication that EasyAcc's account is currently frozen by Amazon or is otherwise functioning abnormally. We cannot grant a TRO based on these "bald and conclusory" accusations.

      Furthermore, the fact that EasyAcc is a defaulted party is not reason alone to assume that it will attempt to avoid payment of a final damages award. Bradley claims that EasyAcc's past failure to appear in this litigation evinces its intent to abscond altogether. *See* (Doc. 123.) He appears to argue that EasyAcc's default is part of a larger malicious scheme, without evidence to support such an allegation. As EasyAcc has just recently petitioned this Court to resume its defense in this matter, it is unlikely in the extreme that EasyAcc is attempting to, in Bradley's words, "evade responsibility for any judgments or awards that may be entered against [it.]"[5] (Doc. 125 at

---

[5] Although EasyAcc is a defaulted party, default judgment has not yet been entered. Under Federal Rule of Civil Procedure 55, an entry of default is a prerequisite to an entry of default judgment. *See* Fed. R. Civ. P. 55. "Once the Clerk enters default, if the claim is not for a sum certain as contemplated by Fed. R. Civ. P. 55(b)(1), then 'the party must apply to the court for a default judgment.'" *Id*. (citing Fed. R. Civ. P. 55(b)(2)). That is, an entry of default alone does not

7

4.) We cannot discern any logic in Plaintiff's argument that EasyAcc plans to flee this litigation in light of the fact that EasyAcc has submitted a formal request to continue as an active defendant. Finally, Bradley asserts that EasyAcc's recent sale of its trademarks to an organization in China "is concerning" and "inexcusable and severely prejudicial." (*Id*. at 3, 4.) EasyAcc counters that only "two trademarks" were "assigned" to a company in China, and that Bradley has not demonstrated "how said trademark assignments would increase the likelihood of causing [him] irreparable harm[.]" (Doc. 130 at 6.) We, too, fail to appreciate how the assignment of two trademarks harms Bradley's ability to recover damages from EasyAcc, or why it would warrant the extraordinary action of freezing EasyAcc's assets. To summarize, Bradley has woefully failed to prove that he is in any danger of being "immediately" or "irreparably" harmed for any of the above-stated reasons, and we will not grant a TRO based on Bradley's mere speculation that EasyAcc may not be able to, or may refuse, to pay a final damages award.

Bradley has also neglected to address any of the elements required for a prejudgment asset freeze. At the outset, Bradley has not satisfied the first element of this test, in that he has not asserted a "cognizable equitable claim" in this litigation. *Symphony FS Ltd*., No. 5:18-CV-3904, 2018 WL 6715894, at *8. Rather, he has only brought allegations of negligence, strict liability, and punitive damages. (Doc. 1 at 16-27.) These claims do not justify injunctive relief because they are legal claims, and as EasyAcc points out, "punitive damages [are] a remedy, not a cause of action." *See F.T. Int'l, Ltd*., No. CIV. A. 00-5004, 2000 WL 1479819, at *2 (denying a prejudgment asset freeze where the plaintiff failed to assert cognizable claims, having only alleged fraud and

---

automatically entitle a plaintiff to a recovery of damages. *See Eastern Elec. Corp. of N.J. v. Shoemaker Constr. Co*., 657 F. Supp. 2d 545, 551 (E.D. Pa. 2009). ("A party is not entitled to a default judgment as of right.")

conversion as legal claims and "return of funds" as a remedy). For this reason alone Bradley would fail to accomplish his request for a prejudgment asset freeze, but he has also failed to provide any substantive argument as to the remaining two elements in the applicable legal framework. We cannot grant a TRO awarding a prejudgment asset freeze to Bradley without reviewing applicable facts or legal contentions that would support such an action.[6] Therefore, just as Bradley could not demonstrate that he possesses the requisite elements for a TRO, he is unable to illustrate any justification for a prejudgment asset freeze. Accordingly, we deny his request.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied. An appropriate Order follows.

---

[6] We remind Plaintiff's counsel that by submitting a written motion to the Court, an attorney certifies that the motion is not being presented for any improper purpose, that the legal contentions made within are nonfrivolous, and that the basis of any factual contentions have evidentiary support. *See* Fed. R. Civ. P. 11. The Court has little tolerance for resolving motions that barely address the legal standards to which they are subject. In the future, we encourage Plaintiff's counsel to not only properly characterize his filings, but also diligently apply the appropriate law to the facts of his case.