IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIAN BRADLEY | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  17-1587 |
| | : | |
| AMAZON.COM, INC et al. | : | |

## **MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    January 27, 2022

Presently before the Court is Defendant Searay LLC's ("Searay") Motion to Set Aside

Entry of Default (Docs. 123, 150), Defendant Amazon.com, Inc.'s ("Amazon") Response (Doc.

126)[1] and Plaintiff Julian Bradley's ("Plaintiff" or "Bradley") Response in Opposition (Doc. 127).

For the reasons set out below, the motion is granted.

### I.   BACKGROUND

At the outset, we acknowledge that the history of this case is both lengthy and convoluted,

and we regret that it is necessary for us to recount what may seem like an excess of background

material. Searay's recent appearance in this litigation, however, has produced new information

that sheds light on past events and is relevant to our consideration of this motion. We accept this

information only as far as it impacts our decision as to whether Searay has a meritorious defense

or has engaged in culpable misconduct leading to the default, and whether Plaintiff would be

prejudiced by the removal of default. *See Feliciano v. Reliant Tooling Co*., 691 F.2d 653, 656 (3d

Cir. 1982). Accordingly, we set out below the parties' participation in the matters underlying this

dispute, as well as a comprehensive summary of the record.

---

[1] Amazon made no argument in support of, or in opposition to, the removal of default. It stated
only that it "does not oppose [Searay's] Motion and the relief requested therein." (Doc. 126 at 1.)

A.  **Entry of Default Against Searay LLC**

Plaintiff commenced this action in the Philadelphia County Court of Common Pleas on March 1, 2017, seeking relief for injuries he suffered on March 18, 2016, when a phone charger he was using exploded and caught fire in his pants pocket.[2] (Doc. 1, Ex. A.) According to Plaintiff, the charger was purchased by his fiancée "on or about July 4, 2015."[3] (*Id*.) In his original complaint, Plaintiff identified both Amazon and another entity, "EasyAcc.com, Inc." as defendants who allegedly "designed, manufactured, developed, distributed, assembled, produced, inspected, licensed, promoted, packaged, processed, compounded, labeled, specified or recommended, certified, marketed, sold, or otherwise supplied and placed in the stream of commerce" the charger. (*Id*.) He also stated in his complaint that he was "unaware of a good address for service of the Complaint for EasyAcc.com, Inc.," due to the fact that, "upon information and belief, Easyacc.com, Inc. is a corporation existing by virtue of the laws of China/Hong Kong." (*Id*.) Amazon was successfully served with process on March 15, 2017 and subsequently removed the case to this Court on April 7, 2017. (Doc. 123-1 at 1.) Only one week later, on April 14, 2017, Amazon filed an Answer to Plaintiff's Complaint that included a crossclaim against "EasyAcc.com, Inc." (Doc. 3.)

---

[2] The phone charger's formal product name is "EasyAcc Powerbank ICHOC-5000." (Doc. 123-1.) There is no dispute that the charger was purchased on Amazon's website, however, Searay claims that the product was "designed and manufactured by Shenzhen Hello Tech Energy Co., Ltd. a/k/a Shenzhen Huabao Xinnengyuan Youxinagongsi," which it has reason to believe is a limited company that was formed under the laws of China and operates in Shenzhen City, Guangdong Province, China. (Doc. 123-2, Chen Decl. ¶ 7.)

[3] In his briefing in response to this motion, Bradley states that he was *injured* by the charger on July 4, 2015. (Doc. 127 at 2.) In his complaint, however, he claims that the charger was *purchased* on July 4, 2015. (Doc. 1, Ex. A.) We note this inconsistency and defer to the factual allegations as they were initially set out in Bradley's complaint.

On April 28, 2017, the Court noted that EasyAcc.com, Inc. had not been served and ordered Plaintiff to effect service or the claims against this defendant would be dismissed for lack of prosecution. (Doc. 4.) Plaintiff tried to serve EasyAcc.com, Inc. at two different business locations in Delaware and submitted affidavits outlining those unsuccessful attempts. (Docs. 5, 8.) On June 9, 2017, and pursuant to Plaintiff's request, the Court granted him an extension to effect service. (Doc. 10.) On that same day, however, Amazon amended its crossclaim to change the name of the co-defendant from "EasyAcc.com, Inc." to "Searay LLC." (Doc. 9.) In making this change, Amazon explained that it had conducted an internet search to try to locate EasyAcc.com, Inc. in order to serve its crossclaim. (Doc. 12.) In the course of that search, Amazon discovered that the term "EasyAcc" was a trademark registered on behalf of Searay. (*Id*.) After locating what it believed to be the correct party, Amazon served Searay with its crossclaim via certified mail on June 9, 2017. (*Id*.) Plaintiff then served Searay with its complaint on June 22, 2017. (Doc. 13.)

Searay has, as set out in its briefing, confirmed this series of events. Searay LLC was a limited liability company formed in Delaware on August 8, 2012. *See* Delaware Department of State: Division of Corporations, *General Information Name Search*, DELAWARE.GOV, https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx (last visited Jan. 24, 2022);[4] *see also* (Doc. 150-1, Chen Supp. Decl. ¶ 7.) From 2012 to 2015, two U.S. federal trademarks and an Amazon.com online store known as "EasyAcc.US Store" were registered to Searay.[5] (*Id*. at ¶ 12.) Searay asserts, through its representative Jason Xie ("Mr. Xie") that it first became aware of this litigation in late March 2017 when contacted by Amazon's counsel. (Doc. 123-2, Chen Decl.

---

[4] Searay LLC's file number on the Division of Corporations' website is: 5184829.

[5] Searay has identified the specific trademarks, both registered with the United States Patent and Trademark Office, as "EASYACC" No. 4413473 (registered October 8, 2013) and "EasyAcc" No. 4596357 (registered September 2, 2014). (Doc. 123-3, Ex. A.)

¶¶ 9-12.) Mr. Xie "promptly responded to [Amazon's counsel's] request for information" on behalf of Searay. (*Id*. at ¶ 13.) On June 6, 2017, Mr. Xie was contacted by Amazon's counsel for a second time, looking for a physical address for "receiving documents." (*Id*. at ¶ 14.) Mr. Xie responded by directing Amazon to send any documents to an individual named Mr. Li Jiang ("Mr. Jiang"), who resided in Georgia. (*Id*.) Searay now claims that it was not made aware that the nature of the documents sent by Amazon may have imposed an obligation to respond. (*Id*. at ¶ 15**.**) It also asserts that Mr. Jiang is not a licensed attorney and that Searay was not represented by any attorney in the United States at the time. (*Id*. at ¶¶ 14-15.) Finally, Searay contends that Mr. Jiang is not affiliated with Searay in any way and apparently did not have Searay's authorization to receive service on its behalf. (*Id*.)

On July 31, 2017, in accordance with a joint stipulation between Plaintiff and Amazon, the Court ordered that any reference to "EasyAcc.com, Inc." in prior pleadings should be amended to "Searay LLC, d/b/a EasyAcc.com, Inc." (Doc. 17.) Searay was not consulted before that change was implemented. (Doc. 150 at 3.) It now claims that it has never "used or adopted" the fictitious trade name designation "EasyAcc.com, Inc.," and that it is "unable to determine the exact source of [its] use other than in this case's caption." (*Id*.) On August 9, 2017, the Court ordered Bradley and Amazon to serve Searay *again*, in recognition of the fact that "Searay LLC, d/b/a EasyAcc.com, Inc." had not been originally named as a party to this litigation. (Doc. 20.) On August 14, 2017, Bradley served Searay for the second time by mailing service to Mr. Jiang's address in Georgia. (Doc. 21.) On August 22, 2017, Amazon also served Searay for the second time by mailing service to Mr. Jiang. Additionally, in the exercise of due diligence and in accordance with usual procedure, Amazon searched for Searay's registered agent on the Delaware Division of Corporations website. (Doc. 23.) The search identified Searay's registered agent as an

entity named "INCUSA LLC." (*Id*.) The registered agent for INCUSA LLC was an individual named Feng Guo ("Mr. Guo"), who resided in San Diego, California. (*Id*.) Amazon contacted Mr. Guo and he provided his address to accept service of legal documents on behalf of Searay.[6] (*Id*.) On September 6, 2017, this Court took formal notice that "Searay LLC d/b/a Easyacc.com, Inc." failed to file an answer or otherwise appear in the litigation. (Doc. 22.) A default, however, was not entered at that time.[7]

On June 13, 2018, the Court stayed all proceedings in this case pending the Third Circuit's resolution of the appeal in *Oberdorf v. Amazon.com, Inc.*, 295 F. Supp. 496 (M.D. Pa. 2017). (Doc. 45.) That stay was in place for over two years until it was lifted on October 5, 2020. (Doc. 55.) On March 29, 2021, this Court ordered the Clerk of Court to enter default against Searay. (Doc. 72.) Only five months later, on August 30, 2021, Bole Yuan ("Mr. Yuan") entered an appearance on behalf of Searay. (Doc. 105.) On November 5, 2021, Searay subsequently filed this motion to set aside the entry of default, seeking to rejoin this litigation. (Doc. 123.)

**B. Non-Party EasyAcc Technology Co., Ltd.**

Searay's motion has brought to light certain information which may be pertinent to the resolution of this dispute. In its briefing, Searay has pointed to the existence of another corporate entity, EasyAcc Technology Co., Ltd. ("EasyAcc, Ltd."), that may have been involved in the sale and distribution of the charger central to the allegations set out here. The current director of EasyAcc, Ltd., Sanzhong Chen ("Mr. Chen"), has submitted a declaration in support of Searay's

---

[6] Searay does not contest the entry of default based on improper service, therefore, we will not make any legal determination as to the sufficiency of service of process in this case.

[7] We note that on September 7, 2017, Bradley made a formal request for entry of default judgment against Searay. (Doc. 24.) The Clerk of Court did not grant this request, however, likely because a party must seek an entry of *default* before entering a *default judgment*. *See infra* note 14.

motion. (Id. at ¶¶ 1-2.) Mr. Chen insists that EasyAcc, Ltd. and Searay are "two separate entities with different ownership structures" and "have never been in any parent-subsidiary relationship[.]"[8] (Doc. 150-1, Chen Supp. Decl. ¶¶ 10-11.) We are told that EasyAcc, Ltd. is a foreign private limited liability company that was formed in February 2015 in Hong Kong, where its corporate office is also located. (*Id*. at ¶ 3.) Mr. Chen reports that EasyAcc, Ltd.'s operations include "the online marketing and sale of a variety of consumer electronic products," which are primarily offered under the umbrella of what Mr. Chen refers to as the "EasyAcc Brand." (Doc. 123-2, Chen Decl. ¶¶ 3-4.)

Mr. Chen describes the "EasyAcc Brand" as consisting of "a group of trademarks registered with the United States Patent and Trademark Office" and includes "a seller account registered with the online marketplace Amazon.com." (*Id*. at ¶ 4.) He reports that EasyAcc, Ltd. acquired that specific seller account from Searay in July 2015. (Doc. 150-1, Chen Supp. Decl. ¶ 13.) Mr. Chen recounts that after the acquisition, EasyAcc, Ltd. changed the name of the seller account from "EasyAcc.US Store" to "EasyAcc.A Store" and continued to market and sell products from Amazon's website. [9] (*Id*.) The transfer of this Amazon seller account could well be critical to the resolution of this case, as it is the *same* account from which the allegedly defective phone charger was purchased. (*Id*. at ¶¶ 13-17.) In fact, EasyAcc appears to have acquired the

---

[8] In its brief supporting this motion, Searay makes frequent, sometimes interchangeable, reference to the actions of EasyAcc, Ltd. as some justification to set aside the entry of default against Searay. (Doc. 123-1.) We were unable to ascertain why we should attribute the actions of EasyAcc, Ltd., a nonparty to this litigation, to Searay. To aid the Court in understanding the relevance of EasyAcc, Ltd.'s role in this matter, specifically its corporate relationship with Searay, we ordered that Searay provide a supplemental brief. (Doc. 138.) In its supplemental brief, Searay provided much of the information that we recount here. (Doc. 150.)

[9] EasyAcc, Ltd. claims that it no longer offers the product that allegedly injured Bradley. In fact, it apparently no longer offers "any smartphone or battery product" through its Amazon seller account. (Doc. 150-1, Chen Supp. Decl. ¶ 20.)

account the *same* month that Plaintiff's fiancée bought the charger. (*Id*.); (Doc. 1, Ex. A) ("On or about July 4, 2015, [Plaintiff's fiancée] purchased for him the Charger to charge his Iphone[.]") At present, the parties claim that they are unable to ascertain who controlled the Amazon store at the time of sale, leaving the record unclear as to which entity, either Searay or EasyAcc, Ltd., is responsible for the sale of the product in question.[10] (Doc. 150 at 4.)

Although EasyAcc, Ltd. is a nonparty to this litigation, it confirms that it has been aware of this dispute since March 2017. (Doc. 123-2, Chen Decl. ¶¶ 9-12.) It claims that Searay's representative, Mr. Xie, forwarded to EasyAcc, Ltd. the first email Searay received from Amazon's counsel.[11] (*Id*.) According to Mr. Chen, the next time EasyAcc, Ltd. received information about this litigation was in December 2017, when an account specialist at Amazon informed EasyAcc, Ltd. that all disbursements from its seller account were placed on hold because of this action. (*Id*. at ¶¶ 16-17.) EasyAcc, Ltd. claims that it promptly responded to Amazon's requests for information and then contacted Bradley's counsel, Feeda Musitief, Esq. ("Mr. Musitief"). (*Id*. at ¶¶ 18-19.) In January 2018, Mr. Musitief apparently provided EasyAcc, Ltd. with proof of damages and the parties briefly discussed settlement terms. (*Id*. at ¶ 19.) After that discussion, EasyAcc, Ltd. and Searay immediately began searching for an attorney. (*Id*. at ¶ 20.)

To the extent that there is any question as to Searay's diligence in defending this litigation, it has demonstrated repeated difficulties in obtaining counsel.[12] According to Mr. Chen, EasyAcc,

---

[10] Mr. Chen states in his declaration that, "after a reasonable investigation with the time given to [him]," he was "unable to determine the exact date of said transfer." (Doc. 150-1, Chen Supp. Decl. ¶ 14.)

[11] Mr. Chen claims that, at the time of his declaration, he was "unable to determine the name of the individual within EasyAcc, Ltd. who received said email or the exact date of his or her receipt of said email." (Doc. 150-1, Chen Supp. Decl. ¶ 22.)

[12] Although EasyAcc, Ltd. and Searay insist that they are separate entities, it appears from the briefing that, starting in January 2018, they were acting jointly in seeking representation. We

Ltd. first contacted "U.S.-located friends for a referral but was unable to find an attorney who was admitted to this Court." (*Id*. at ¶ 21.) In March 2018, EasyAcc, Ltd. and Searay emailed two Pennsylvania attorneys after receiving a referral from Amazon's prior counsel. (*Id*. at ¶ 22.); (Doc. 123-3, Ex. B.) They had discussions with one of those lawyers but were unable to retain him due to financial difficulties. (Doc. 123-2, Chen Decl. ¶ 23.) Mr. Chen explains that they ceased their search for an attorney in June 2018 once the stay was in place but resumed that search in October 2020 after they were alerted by Amazon's current counsel that the litigation was again active. (*Id*. at ¶ 25.) He reports that in December 2020, EasyAcc, Ltd. reached out to two other Pennsylvania attorneys seeking representation in this matter, but neither responded. (*Id*. at ¶ 27.); (Doc. 123-3, Ex. C.) In February 2021, EasyAcc, Ltd. posted an attorney request with "LegalMatch," an online legal service where users submit information about their case in search of interested lawyers. (Doc. 123-2, Chen Decl. ¶¶ 28-29.); (Doc. 123-3, Ex. D). It received no response to its posting. (*Id*.) Mr. Chen reports that EasyAcc, Ltd. was finally able to retain its current counsel, Mr. Yuan, in August 2021 via referral from a local trade organization. (*Id*. at ¶ 30.)

### C.  Searay LLC's Current Status

Following the transfer of the Amazon store to EasyAcc, Ltd. in 2015, Searay continued to exist "for the sole purpose of holding the registered EasyAcc trademarks." (Doc. 150-1, Chen Supp. Decl. ¶ 18.) During the stay of this litigation, however, Searay assigned those trademarks to a Chinese company, Chang Sha Meng Tuo Electronic Commerce Co., Ltd. (*Id*. at ¶ 19); (Doc. 123-

---

emphasize again that Searay is the named and defaulted party in this case, and that EasyAcc, Ltd. remains a nonparty. Having reviewed the information presented, however, we are comfortable in attributing EasyAcc, Ltd.'s efforts in locating counsel to Searay. EasyAcc, Ltd.'s communications with Searay were such that it was fully aware of Bradley's legal claims and its possible implication in those claims. EasyAcc, Ltd. continued to seek counsel, and in fact retained counsel, on Searay's behalf and with Searay's permission—even after it ceased operations. (Doc. 150-1, Chen Supp. Decl. ¶¶ 25-26.)

3, Ex. A). Searay then ceased all operations. (Doc. 150-1, Chen Supp. Decl. ¶ 19.) Mr. Chen asserts

that, to his knowledge, Searay is no longer in existence. (*Id*. at ¶ 9.) Its Delaware business

registration has been cancelled as of June 1, 2021. (*Id*.) Mr. Chen claims that although Searay is

no longer a viable company, "prior members of Searay LLC have consented to Mr. Yuan's joint

representation."[13] (*Id*. at ¶¶ 25-26.) We acknowledge that EasyAcc, Ltd. and Searay are

represented by the same attorney, however, EasyAcc, Ltd. remains a nonparty to this litigation.

EasyAcc Ltd.'s nonparty status does not necessarily preclude its ability to provide information to

the Court.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, "[t]he court may set aside an entry of

default for good cause[.]" Fed. R. Civ. P. 55(c). A trial court has broad discretion in deciding

whether to set aside a default. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

---

[13] These "prior members of Searay" who are acting on behalf of the now-defunct organization have not been identified. We remind Searay that although it may no longer exist as an active corporate entity, its responsibility to respond to and defend a lawsuit has not been terminated. As a limited liability company that was organized under the laws of Delaware, Searay is subject to Delaware's Limited Liability Company Act ("DLLC Act"). *See* Del. Code Ann. 6 § 18-101, *et seq*. The DLLC Act sets out minimum requirements for effective dissolution, which includes the appointment of "persons winding up the limited liability company's affairs" to "prosecute and defend suits," among other responsibilities. *Id*. § 18-803(b). Even after a certificate of formation is officially cancelled, the DLLC Act allows the Delaware Court of Chancery, "on application of any creditor, member or manager of the limited liability company, or any other person who shows good cause" to appoint agents, trustees, or receivers "to prosecute and defend" lawsuits. *Id*. § 18-805. Beyond these statutory remedies, Searay is likely aware that there are other equitable avenues by which dissolved companies and its members may be held accountable. It is unclear if Searay has already formally designated successors-in-interest, assigns, agents, trustees, or receivers to defend this litigation on its behalf. Additionally, it is unclear in what capacity, if any, EasyAcc, Ltd. is making arguments and representations on Searay's behalf. We do not appreciate any attempts to obfuscate the identity of potentially culpable defendants. Thus, we advise Searay to clarify the legal mechanism by which it intends to appear and defend this suit, as this outstanding question will no doubt cause further frustration in this litigation if not resolved soon.

"[T]he exercise of such judgment, [however], does not lend itself to a rigid formula or to a *per se* rule." *Id*. To that end, we are guided by a three-factor test set out by the Third Circuit: (1) whether the defendant has a meritorious defense; (2) whether culpable conduct of the defendant led to the default; and (3) whether the plaintiff will be prejudiced. *See Feliciano,* 691 F.2d at 656. In weighing these factors, the Third Circuit has stated its preference that "cases be disposed of on the merits whenever practicable." *Hritz*, 732 F.2d at 1181. As a general matter, if the question of setting aside a default is a "close case," then "doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc*., 700 F.2d 120, 122 (3d Cir. 1983) (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)). Moreover, in acknowledgement of the "distinction between a *default* standing alone and a *default judgment*," the Third Circuit has advised that "[l]ess substantial grounds may be adequate for setting aside a *default* than would be required for opening a *judgment*."[14] *Feliciano*, 691 F.2d at 656 (emphasis added).

---

[14] In his briefing, Plaintiff cites to Federal Rule of Civil Procedure 60 as the standard by which we should review the removal of default. (Doc. 127 at 4.) Rule 60, however, is only relevant when opening a "*final default judgment*." Fed. R. Civ. P. 55(c) (emphasis added). As explained above, Rule 55 is the relevant authority in setting aside an "*entry of default*." *Id*. (emphasis added). It is important that Plaintiff understands the difference between a default and a default judgment. An *entry of default* is a prerequisite to an entry of *default judgment*. Once default has been entered against a party, that party is "deemed to have admitted to every well-pled allegation in the complaint, except for those relating to the amount of damages." *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015). Thus, an entry of default indicates a party's failure to respond to the complaint and prohibits any further contest of the plaintiff's allegations, but it does not automatically entitle a plaintiff to default judgment, which allows the plaintiff to recover damages. *See Eastern Elec. Corp. of N.J. v. Shoemaker Constr. Co*., 657 F. Supp. 2d 545, 551 (E.D. Pa. 2009) ("A party is not entitled to a default judgment as of right."). After the Clerk of Court enters a default, the plaintiff must apply to the court for a default judgment—only then will the plaintiff have the right to seek damages or costs. *See* Fed. R. Civ. P. 55(b). We acknowledge that setting aside a default and vacating a default judgment are both subject to the same three-prong test set out above, but the standard for setting aside a *default* is lower. *See Feliciano*, 691 F.2d at 656. In this case, default judgment has not yet been entered against Searay LLC; it remains only a defaulted party and thus we review this motion under Rule 55.

### III.   DISCUSSION

In light of the record detailed above, Searay asserts that the default entered against it should be set aside. At the outset, Searay claims to have numerous meritorious defenses to the factual allegations in the complaint. As to the question of its "culpability" in the entry of default, Searay contends that it exercised due diligence in procuring counsel to appear on its behalf, and that it should not be held responsible for the labyrinth of procedural missteps and identification errors that obscured its involvement in this case for years. Finally, Searay argues that Plaintiff's case will not be prejudiced by Searay's reintroduction to this litigation but could well benefit from the information Searay has to offer. We address the three *Feliciano* factors below and conclude that the entry of default against Searay must be set aside.

### A.   Meritorious Defense

The Third Circuit has explained that "[t]he threshold issue in opening a [default] is whether a meritorious defense has been asserted." *Hritz*, 732 F.2d at 1181. A meritorious defense "is presumptively established when the allegations of defendant's answer, if established at trial, would constitute a complete defense to the action." *Id*. (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)) (internal quotation marks omitted). A defaulted party need not prove that its proffered defense will prevail. *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). The defense is sufficient so long as it is not "facially unmeritorious." *Id*. (citing *Gross*, 700 F.2d at 123). That said, the defaulted party must allege "specific facts beyond simple denials or conclusionary statements." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). To determine whether Defendant has set forth a "meritorious defense" to Plaintiff's claims, we must look to the underlying claim itself, as well as what is required of a defendant to successfully defend against that claim. *See id*.

Here, Plaintiff has brought counts of negligence, strict liability, and punitive damages arising out of an incident allegedly involving the product sold by Searay. (Doc. 1, Ex. A.) The Third Circuit, applying Pennsylvania law in the context of a Section 402A claim, has stated that defendants are permitted "to introduce evidence that the plaintiff assumed the risk or misused the product, and possibly may introduce evidence that the plaintiff engaged in highly reckless conduct to defeat a products liability claim."[15] *Dillinger v. Caterpillar, Inc*., 959 F.2d 430, 445 (3d Cir. 1992). Searay points out that "Pennsylvania courts have consistently held that a plaintiff's assumption of the risk is a defense to strict products liability" and that "[d]efendants are also allowed to introduce evidence to establish that plaintiff misused the product." (Doc. 123-1 at 8-9) (citing *Dillinger*, 959 F.2d at 445.) Searay, via EasyAcc Ltd.'s director Mr. Chen, claims that the product "was packaged with a user manual that sets forth warnings which, if properly followed, would not cause injury to any consumer."[16] (Doc. 123-1 at 9.) Searay also asserts that these

---

[15] As the Third Circuit explained, "the Pennsylvania Supreme Court adopted Section 402A of the Restatement (Second) of Torts as the law of Pennsylvania in products liability actions, [which] imposes liability upon the seller of a defective product that causes injury to the user or consumer. *Dillinger*, 959 F.2d at 435. Since that decision, the Pennsylvania Supreme Court "has taken a consistent approach in strict liability actions and has refused to permit any evidence of [contributory] negligence on the part of the plaintiff to be introduced to defeat a claim under this section." *Id*. Although a Pennsylvania court is not permitted to introduce the plaintiff's contributory negligence in a Section 402A claim, "[t]he Pennsylvania Supreme Court has *never* held that evidence of a plaintiff's conduct is irrelevant and inadmissible in such actions for any purpose." *Id*. (emphasis added). Thus, as we have recounted above, in defending a strict liability claim, a defendant *may* introduce evidence of: (1) plaintiff's assumption of the risk; (2) plaintiff's misuse of the product; or (3) plaintiff's highly reckless conduct. *Id*.

[16] The specific user warnings are: "DO NOT short-circuit/overcharge/overdischarge ICHOC-5000; Only use a charger with an output of DC 5V 1A-2A to charge ICHOC-5000. (DC 5V 2A recommended); Never heat ICHOC-5000 or get it wet. Keep it away from fire and water; Never keep or use ICHOC-5000 in a hot environment. Keep it out of the sun or a hot car; Never use ICHOC-5000 in a humid environment, as that may cause it to enter Protective Mode or be damaged; Do not charge ICHOC-5000 while it is in a carrying case. Heat generated during the charging process will have negative effects on its capacity; Do not drop, strike, throw, trample, or impale ICHOC-5000; Nonprofessional repair and disassembly of ICHOC-5000 will cause

warnings are relevant to its defenses that Bradley was not only aware of the risks in operating the phone charger, but also misused the product by charging the phone in his pocket. (*Id*.) Bradley counters that Searay's alleged defenses are "base" and that "none of the [product] warnings are applicable" in the circumstances of this case. (Doc. 127 at 5.) We remind Bradley that in setting aside an entry of default, Searay need not prove that its meritorious defenses will be successful. Rather, it must only allege specific facts to support a facially viable defense that can be addressed substantively at trial. We find that Searay's arguments related to the product's warnings are permissible defenses under Pennsylvania law, and could constitute meritorious defenses to plaintiff's claims if established at trial.[17]

Moreover, Searay's additional "meritorious defense" is that it was improperly named in this litigation, as "[Searay's] involvement in this action is limited to being the prior owner of the trademarks used by EasyAcc, Ltd." (Doc. 123-1 at 9). Searay claims that EasyAcc Ltd. may be liable for the sale and distribution of the product at issue in this case. (*Id*.) According to Mr. Chen, Searay was the operator of the Amazon.com seller account known as "EasyAcc.US Store" until it was transferred to EasyAcc, Ltd. sometime in July 2015—the same month that Bradley purchased the product allegedly sold by that account. (Doc. 150-1, Chen Supp. Decl. ¶¶ 13-17) Mr. Chen admits that he was not able to ascertain the exact date of the transfer, thus, "it is not clear whether EasyAcc, Ltd. or Searay LLC controlled said store when it allegedly sold the product in question to Plaintiff." (Doc. 150 at 2-3); (Doc. 150-1, Chen Supp. Decl. ¶¶ 14-18). Searay asserts that it was

---

damages; it should be repaired only by a professional engineer; Do not leave the charger plugged in at all times." (Doc. 123-2, Chen Decl. ¶ 8.)

[17] We note that Searay does not set forth specific defenses to the negligence claim, but we are satisfied that its assertion of an assumption of the risk defense, for example, is applicable to common law negligence claims in addition to Pennsylvania strict liability claims. *See* 2 Summ. Pa. Jur. 2d Torts § 20:167 (2d ed.)

"neither the real operator of the online store that sold the product in question to Plaintiff nor the manufacturer of said product." (Doc 123-1 at 7.) Thus, Searay contends that it may not be "a real party in interest at all," which, if established at trial, would "negate" Plaintiff's claims of liability. (*Id*. at 9.) Bradley counters that this defense "has nothing to do with the substance of the litigation[,]" and that Searay "seeks to blame an entity in China that is immune from suit." [18] (Doc. 127 at 5.) On the contrary, it is not only *essential* to "the substance of the litigation" that the proper defendant is identified, but *fundamental* to the interests of justice that a potentially liable defendant has the opportunity to petition for relief.[19] There is an outstanding question as to whether EasyAcc, Ltd. or Searay had operational control over the Amazon store that sold the allegedly defective product; the identity of that seller is undoubtedly central to the resolution of this dispute. In our view, Searay has presented this Court with specific facts that demonstrate it may or may not have been not involved in the events that gave rise to this litigation. We emphasize again that Searay need not prove that this defense will "prevail" at trial, so long as its claims are "facially" meritorious. *Emcasco Ins. Co.*, 834 F.2d at 74. We find that Searay's factual allegations in support of its non-liability meet this low bar.

### B.  Culpability

For the second prong of the inquiry, we must determine whether Searay's failure to answer Bradley's complaint was the result of culpable conduct. *See Gross*, 700 F.2d at 124 (explaining that "willful violation of court rules and orders, contumacious conduct or intentional delay"

---

[18] In reference to Plaintiff's claim that EasyAcc. Ltd. is "immune" from suit, he asks the Court to "toll and extend the statute of limitation" so that he can "subsequently join and sue these Chinese entities[.]" (Doc. 127 at 5, n.1.) We decline to consider the possible joinder of additional parties to this suit as that question is not presently before us.

[19] The Third Circuit has stated that "a claim that the wrong party was saddled with the [default] *may* be a compelling reason set that default aside. *Hritz*, 732 F.2d at 1181, n.2.

constitutes culpability). Culpable conduct in the context of this prong means "actions taken willfully or in bad faith." *Id*. at 123–24. The Third Circuit has interpreted this standard to require "more than mere negligence" on the part of the defaulted party. *Hritz*, 732 F.2d at 1183. Instead, a defaulted party's failure to defend the litigation must be "flagrant," "callous," and "deliberate." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 75 (3d Cir. 1987) (internal citations omitted.) To this end, culpability may be imputed by a defendant's "reckless disregard for repeated communications from plaintiffs and the court[.]" *Hritz*, 732 F.2d at 1183. A party's culpable conduct cannot, however, "be inferred from the default [itself] but must appear independently[.]" *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co*., 657 F. Supp. 2d 545, 551 (E.D. Pa. 2009) (internal citation omitted) (emphasis added).

Searay characterizes its failure to timely respond to this action as "excusable neglect attributable to the limitations as a foreign entity doing business in the United States." (Doc. 123-1 at 11.) As "an overseas company [with] limited knowledge of the American legal system and staff located in the United States," Searay claims that it did not have local legal counsel at the time it learned of this action, and subsequently encountered repeated difficulties in retaining an attorney. (*Id*. at 10.) Searay has demonstrated that it although it attempted to hire legal counsel during the pendency of this litigation, its various requests to several attorneys went unanswered. (Doc. 123-2, Chen Decl. ¶¶ 21-23, 26-29); (Doc. 123-3 Exs. B, C). Before the stay, Searay and EasyAcc, Ltd. reached out to business associates in the United States for a referral and contacted two Pennsylvania attorneys, without success. (Doc. 123-2, Chen Decl. ¶¶ 21-23.) After the stay, on behalf of itself and Searay, EasyAcc, Ltd. emailed two additional Pennsylvania attorneys and posted an attorney request on a legal matching website, again without success. (*Id*. at ¶¶ 27-29.) In the one instance where an attorney did respond, Searay could not afford the attorney's services.

(*Id.* at ¶ 23.) Default has been set aside where the defaulted party explained that the "failure to timely respond to the complaint was due in large part to his having to search for and retain counsel[.]" *Cassell v. Philadelphia Maint. Co*., 198 F.R.D. 67, 69 (E.D. Pa. 2000). Although Bradley accuses Searay of failing to "set forth specific attempts to retain counsel," we do not agree. (Doc. 127 at 6.) We conclude, however, that Searay has proffered adequate particularized evidence of its good faith efforts in finding representation that cannot be construed as willful misconduct, but at most, may be excusable neglect.

Searay also comments that Plaintiff created confusion over Searay's obligation to respond to this litigation, as Plaintiff misidentified Searay as "EasyAcc.com, Inc." in his original complaint. (Doc. 123-1 at 10.) According to Searay, it has never "used or adopted" that fictitious trade name. (Doc. 150 at 3.) Unsurprisingly, Plaintiff's initial attempts to serve "Easyacc.com, Inc." were unsuccessful, as it appears that no such organization exists. In fact, Searay was not formally named as a party until five months after the complaint was originally filed. (Doc. 123-1 at 10); (Doc. 17). Furthermore, after Searay was established as the owner of certain "EasyAcc" trademarks, Amazon asked Searay to provide an address for "receiving documents." (Doc. 123-1 at 10.) Searay claims, however, that it "was unrepresented by an attorney and was not made aware of the nature of the documents" that the parties intended to mail, nor was it informed of "its obligation to respond to these documents." (*Id.*); (Doc. 123-2, Chen Decl. ¶ 15.) As it did not understand that the documents were of a legal nature, Searay "provided the address of [Mr. Jiang], who is neither a party to this action, nor an attorney capable to accept service on its behalf." (Doc. 123-1 at 10.) Finally, Searay points to the lengthy stay of this action from June 13, 2018 to October 5, 2020 as contributing to the confusion and delay over its obligation to respond. (*Id.*); (Doc. 123-2, Chen Decl. ¶ 24.)

The Third Circuit has stated that it is "unrealistic" to expect foreign individuals or entities to be acquainted with civil procedure in the United States, and so any resulting confusion on that basis may excuse default. *Feliciano*, 691 F.2d at 657. Plaintiff points out, however, that Searay was a Delaware company at the time this action commenced, and thus any alleged issues regarding service on a foreign entity, or any alleged legal misunderstandings due to a "language barrier," would "wrongly scapegoat the American federal judicial system and process." (Doc. 127 at 6.) We acknowledge that Searay was a limited liability company organized in Delaware and required by law to maintain a "registered agent" in the state that could accept service on its behalf. (Doc. 150-1 at ¶ 7); *see also* Del. Code Ann. 6 §§ 18-104, 18-105. Although Searay was organized in the United States, it repeatedly insists that it was a "foreign entity" and an "overseas company doing business in the United States." (Doc. 123-1 at 11.) By way of example, at the time Searay learned of this suit its corporate representative Mr. Xie was based out of London, and Searay indicated that it otherwise maintained "limited staff" in the United States. (Doc. 12); (Doc. 123-1 at 10.) Further, and as set out in its briefing, most of Searay's business took place in China and amongst Chinese companies; both the transfer of its Amazon seller account and the assignment of its trademarks were transacted with organizations based in China and Hong Kong. (Doc. 150-1, Chen Supp. Decl. ¶¶ 13, 19.) Searay has also acknowledged that EasyAcc, Ltd., which operates out of Hong Kong, conducted most of its efforts in attempting to find counsel. (*Id.* at ¶¶ 25-26). In our view, Searay has demonstrated that there was "a serious breakdown in communication" between the parties that cannot be attributed to willful misconduct on Searay's part. *Gross*, 700 F.2d at 124. Searay did not primarily operate out of the United States and may not have, as it asserts, appreciated the legal significance of the documents it received from the other parties. This confusion was likely compounded by the fact that Searay was not properly identified as a party to the suit at the outset.

Nor can we discount that the manner in which Searay was served may have affected its ability to grasp its legal obligations.[20]

Plaintiff urges us to consider that Searay has failed to engage in this case for several years, and that length of time should suggest some level of deliberate conduct on Searay's part in avoiding this litigation. (Doc. 127 at 6.) We emphasize again that absent independent proof of Searay's "willful" misconduct in avoiding this litigation, we cannot infer culpability merely from the fact that Searay was nonresponsive. *See E. Elec. Corp. of New Jersey*, 657 F. Supp. 2d at 551. Furthermore, we can hardly attribute years of inactivity to Searay alone, when this case was stayed between June 2018 and October 2020 for reasons unrelated to Searay's failure to appear. In sum, we reject Plaintiff's argument that Searay was culpable by creating intentional delay in failing to respond to this suit.

### C. Prejudice

Turning to the final prong of the inquiry, we must determine whether Plaintiff would suffer prejudice in the event we vacate the default against Searay. *See Feliciano*, 691 F.2d at 656. Courts have found that prejudice occurs "where vacating the default judgment would result in lost evidence, an increased likelihood of fraud or collusion, or substantial reliance upon the judgment." *Dee Paper Co., Inc v. Loos*, No. CV 15-1513, 2015 WL 5460590, at *5 (E.D. Pa. Sept. 17, 2015) (citing *Feliciano*, 691 F.2d at 657). Delay, alone, rarely establishes the degree of prejudice sufficient to prevent the setting aside of a default, particularly when the default was entered at an early stage in the proceeding. *See Feliciano*, 691 F.2d at 656-57. Rather, "[p]rejudice arises where the setting aside of default results in some occurrence that tends to impair the plaintiff's ability to

---

[20] As we have stated, *see supra* note 6, Searay does not contest the entry of default due to improper service. It does, however, point to issues with how service was effectuated in this case, which we cannot ignore in our decision to set aside Searay's default.

pursue the claim." *Choice Hotels Int'l, Inc. v. Pennave Assocs., Inc.*, 192 F.R.D. 171, 174 (E.D. Pa. 2000). The mere fact that a plaintiff "will have to litigate an action on the merits rather than proceed by default does not constitute prejudice." *Id*.

Plaintiff claims that he would be "significantly prejudiced" by Searay's return to this litigation due to "the passage of time, loss of evidence, and loss of opportunity to join potentially other entities and individuals with which [Searay] has, by its actions, shielded." (Doc. 127 at 4.) He also contends that any information Searay has to offer is now "stale." (*Id*. at 5.) Plaintiff further alleges that "requiring the parties to re-engage discovery and redo depositions and all other discovery that has transpired the past four years would be prejudicial and an extraordinary waste of judicial and legal resources." (*Id*. at 4-5.) Finally, Plaintiff believes that Searay's motivations in setting aside the default are rooted in bad faith, as he accuses Searay of wanting to set aside the default so that it can "blame some other entity, claim insolvency, or otherwise try to further duck the legal process." (*Id*. at 4.) In response, Searay claims that if the default is set aside, then Plaintiff will have "*more* tools at its disposal to investigate his claims, [including] interrogating the witnesses and seeking documents under the control of [Searay]." (Doc. 123-1 at 7) (emphasis added). Furthermore, Searay claims that "justice will serve in Plaintiff's favor" if Searay is brought back into this litigation, as it can "plead and provide crucial information and documents as to [EasyAcc, Ltd.'s liability]" as well as "join the proper parties." (*Id*. at 8.)

Plaintiff has failed to convince us that he would be prejudiced if the default is set aside. Bradley has failed to articulate specific examples of evidence that may be "stale" or no longer available to him as a result of Searay's default. We expect that Plaintiff may benefit if the default is set aside, as Searay may possess discoverable information about the product's sale and manufacture. In the briefing of this motion alone, Searay has provided Plaintiff with notice about

EasyAcc, Ltd.'s existence and has articulated facts that demonstrate EasyAcc, Ltd.'s potential liability. Unlike Plaintiff or Amazon, Searay appears to have identified EasyAcc, Ltd. as the seller and operator of the online store at times relevant to this litigation.[21] In light of this disclosure, we cannot discern how Searay has "shielded" any entities from Plaintiff, as it seems Searay has done the opposite. Plaintiff was unsuccessful in his efforts to properly locate EasyAcc, Ltd. for almost five years; Searay has not caused any "loss of opportunity" for Plaintiff to join EasyAcc, Ltd. to this litigation, rather, it appears that it may have *provided* an opportunity for Plaintiff to pursue another culpable party in seeking relief.[22]

Briefly addressing Plaintiff's remaining arguments, any claim by Plaintiff that Searay is attempting to "duck the legal process" is discredited by the fact that Searay is currently petitioning this Court to proceed as an active party. We fail to appreciate why a party seeking to *avoid* a lawsuit would file a formal request to be brought back into the suit and resume its participation in legal proceedings. Additionally, we are unaware of any intent by Searay to, in Plaintiff's words, "claim insolvency" once the default is removed. Plaintiff has failed to articulate any facts to support this allegation, and even in the event that Searay turns out to be insolvent, this circumstance

---

[21] Searay admits that more discovery is needed to determine which party, exactly, sold the product to Bradley. (Doc. 150 at 4.) Even in the event it turns out that EasyAcc, Ltd. did *not* sell the product, its presence in this litigation is undoubtedly relevant. EasyAcc, Ltd. is not only the current operator of the Amazon seller account, but it has effectively stepped in the shoes of the now-defunct Searay.

[22] We are not convinced that Searay should be held responsible for Plaintiff's failure to join EasyAcc, Ltd. as a party to this suit. Although Plaintiff claims to be previously unaware of EasyAcc, Ltd.'s existence, EasyAcc, Ltd. asserts that it was in contact with Plaintiff's attorney, Mr. Musitief, in January 2018. (Doc. 123-2, Chen Decl. ¶¶ 18-19.) In fact, based on our reading of Plaintiff's complaint, it appears that Mr. Musitief had some knowledge that the seller of the product was "a corporation existing by virtue of the laws of China/Hong Kong" even at the outset of this litigation. (Doc. 1, Ex. A.)

is not relevant to the motion before us at this time.[23] Finally, Plaintiff points out that over four years have passed since this litigation was first filed and that Searay has remained non-responsive for most of that time. We remind Plaintiff that delay, alone, rarely establishes the degree of prejudice sufficient to prevent the setting aside of a default. *See Feliciano*, 691 F.2d at 656-57. Plaintiff has failed to convince us that he would be harmed in any way by the reintroduction of Searay to this litigation.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion is granted. An appropriate Order follows.

---

[23] Searay has indicated that it is no longer an active corporate entity, however, dissolution does not automatically equate to insolvency. As we have stated, *see supra* note 13, more discovery is needed as to the question of Searay's representation in this case, which may include information regarding its capacity to pay damages.